[Civ. No. 20111. Second Dist., Div. Three. Aug. 31, 1954.]

H. J. WILSON, Appellant, v. LOS ANGELES COUNTY EMPLOYEES ASSOCIATION (a Nonprofit Corporation) et al., Respondents.

H. J. Wilson, in pro. per., for Appellant.

Lillie & Bryant and Walter M. Campbell, Jr., for Respondents.

VALLÉE, J.—Plaintiff appeals from an order denying his motion to expunge the entry of the judgment in this action signed June 5, 1953, and purported to have been entered on June 5, 1953.

In the afternoon of June 5, 1953, the judge of the Superior Court of the County of Los Angeles who tried the action signed the judgment and gave it to his courtroom clerk who stamped it and a carbon copy "Filed June 5, 1953," with his signature, and transmitted them by messenger to the judgment section of the main office of the county clerk. The same afternoon a deputy clerk, by stamp and writing, endorsed the original judgment as having been entered in Judgment Book 2559, page 181, numbered the pages of the original judgment as 181, 182, and 183, and wrote June 5, 1953, thereon as the date of entry. She then conformed the carbon copy of the judgment with the original and placed both of them in a basket on her desk.

A few minutes after 5 o'clock on June 5, plaintiff examined Judgment Book 2559 and found that the last judgment entered

in the book was on page 173. He also found, in the same basket on the deputy's desk in which the original and carbon copy of the judgment in this action were lying, the originals and carbon copies of judgments numbered pages 174-180, inclusive, of Book 2559, which pages were later entered under date of June 8, 1953.

On June 8, 1953, or some time thereafter, the carbon copy of the judgment in this action was inserted in Judgment Book 2559 as pages 181, 182, and 183 thereof. The original judgment was transmitted to the file section for filing in the case file, and a memorandum of the date, book, and page of entry was made in the register of actions.

Some time later defendants' attorney examined Judgment Book 2559 and others and found that judgments are frequently entered out of chronological order. He also found that judgments are frequently entered in books of different numbers at the same time. A large volume of judgments come in from branch courts and judgments are entered by several clerks at the same time, in which case each clerk is assigned a block of numbers, possibly from the same book, and each clerk may complete his assigned block of numbers on dates unrelated to the dates of entry in the other blocks of numbers.

The county clerk filed an affidavit in which he stated the procedure generally followed in entering civil judgments: Prior to August 1, 1952, when a judgment was received for entry a deputy placed an identifying book and page number on the upper margin of the judgment pages and an entry stamp on the first page of the judgment. The entry stamp included space for the date of entry, book and page number in the judgment book, and the signature of the deputy processing the entry. The signed, book and paged, and entry-dated judgment was then photographed, which usually occurred on the day following the paging and numbering. The photocopies were bound together as pages in a judgment book. On August 1, 1952, rule 23 of the Superior Court of the County of Los Angeles became effective. It requires attorneys to submit with the proposed original judgment a complete and clearly legible copy. Subsequent to August 1, 1952, the county clerk, upon receiving the original signed judgment from the court, together with the carbon copy, conforms the carbon copy to the original, assigns a book, page, and date to the judgment, and thereafter causes it to be bound in the judgment book. The new rule made it "possible to enter a judgment immediately upon filing without waiting for the photostating process the following day."

The motion to expunge was made on two grounds: 1. The purported entry is false in fact; 2. The "carbon copy" procedure is insufficient to constitute entry of the judgment within the requirements of section 668 of the Code of Civil Procedure. It is conceded that the judgment was not entered on June 5, 1953, the date the record shows it was entered.

The pertinent provision of section 664 of the Code of Civil Procedure reads: "If the trial, in a superior or municipal court, has been had by the court, judgment must be entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision; . . . In no case is a judgment effectual for any purpose until entered." Section 668, so far as relevant, provides: "The clerk of the superior court must keep, with the records of the court, a book called the 'judgment book,' in which judgments must be entered."

Once a judgment has been rendered it is the duty of the clerk to enter it in the judgment book. Until a judgment is entered it is not effectual for any purpose. (*Phillips* v. *Phillips,* 41 Cal.2d 869, 873-874 [264 P.2d 926].) The entry of a judgment consists in the recording of it in the judgment book, and there can be no record of a judgment until so entered. (*Wilson* v. *Durkee,* 20 Cal.App. 492, 494 [129 P. 617].) A judgment is entered when it is actually entered in the judgment book. (*Verdier* v. *Verdier,* 118 Cal. App.2d 279, 280 [257 P.2d 723].) The judgment book is a record of the court; it is the final repository of the determination of the court upon every cause which goes to judgment; it is the permanent memorial of those matters ordained by law to be kept. (*Simmons* v. *Threshour,* 118 Cal. 100, 101 [50 P. 312].) At any time before a judgment is entered the court may change its conclusions of law and enter a judgment different from that first announced, and a judge who has heard the evidence may at any time before entry of judgment amend or change his findings of fact. (*Phillips* v. *Phillips,* 41 Cal.2d 869, 874 [264 P.2d 926].)

The date of entry of a judgment is, of course, a judicial record. A judicial record imports verity. The entry should speak the truth and correctly express when it was done. An error in making an entry should not operate to prejudice a party. The entry of the judgment is the initial point from which rights arise thereunder, for the commencement of various acts, and for the tolling of other rights. (*Lane* v. *Pelissier,* 208 Cal. 590, 593 [283 P. 810].) One of the purposes of the statute is to guarantee in-

tegrity and verity in the making of the record to the end that the parties and the public may safely rely on the truth of such record and certified copies thereof. The recording of an incorrect date as the date of entry of the judgment is without any binding force. (*Old Settlers Investment Co.* v. *White,* 158 Cal. 236, 245-246 [110 P. 922].) An erroneous clerical entry in a judicial record should be vacated and set aside. (*Goddard* v. *Electric Shovel Coal Corp.,* 7 Cir., 97 F.2d 754, 758.)

Admittedly, June 5, 1953, as the date the judgment was entered is false. A false date of entry of a judgment should not be permitted to stand; it should be expunged. There is nothing in the record here to indicate, as there was in *Menzies* v. *Watson,* 105 Cal. 109 [38 P. 641], that the true date of the entry of the judgment cannot be ascertained. The Menzies case is not in point here. That was an appeal from an order denying a motion to correct the date of the entry of the judgment. The trial court and the court on appeal held that the evidence was insufficient to show the actual date of entry. (*Cf. Verdier* v. *Verdier,* 118 Cal.App. 2d 279 [257 P.2d 723].) Here plaintiff is not seeking to correct the date; he is seeking to have a false date expunged. Merely because he did not seek to have the date corrected— apparently he has no knowledge of the actual date the judgment was entered—is no reason for permitting what is concededly a false date to stand. The failure of the clerk to record the true date of the entry of the judgment was a failure to perform a ministerial duty which could be performed afterwards at his own instance, or by direction of the court, at any time. (*Holt* v. *Holt,* 107 Cal. 258, 261 [40 P. 390]; *Baker* v. *Brickell,* 102 Cal. 620, 623 [36 P. 950].) The power of a court of record to cause its proceedings to be correctly set forth in its records is inherent to the very existence of the court. The clerk of the court is an assistant whose principal duty is to make a correct memorial of the proceedings. Whenever it is made to appear that the clerk's record does not correctly show the true fact the court should, on its own motion, correct the error. (*People's Ditch Co.* v. *Foothill Irr. Dist.,* 123 Cal.App. 257, 261 [11 P.2d 86].)

We are in accord with the statement of the court in *Verdier* v. *Verdier,* 118 Cal.App.2d 279, 282 [257 P.2d 723] : "We feel called upon to condemn strongly the practice of any clerk's office in placing on the record any date of entry other than the actual date. Section 664, Code of Civil Proce-

dure, provides that a judgment on a jury verdict must be entered within 24 hours after the rendition of the verdict and that where there is a court trial the judgment must be entered *immediately* upon the filing of the judgment. If because of pressure of business, shortage of clerks or otherwise, this mandate cannot be strictly complied with, there is no possible excuse for showing a different date of entry than the actual one. In the Menzies case, *supra,* [105 Cal. 109] it was pointed out that keeping records with a 'disregard of truth as to dates . . . is a violation of official duty' and is a 'vicious practice.' ''

 Plaintiff's contention that the ''carbon copy'' procedure of entering judgments is ineffectual to constitute entry has no merit. Nowhere in the statutes is the manner by which the clerk is to enter a judgment prescribed. His duty, as stated in section 664 of the Code of Civil Procedure, is to enter the judgment *''in conformity* to the decision of the court, immediately upon the filing of such decision.'' (Italics added.)

Plaintiff argues that rule 23 of the Superior Court of the County of Los Angeles does not prescribe the ''carbon copy'' procedure for entering judgments, that the rule ''simply requires the attorney to submit the original and one (in branch courts two) clearly legible copies thereof''; and that ''the rule could not change a statutory procedure, nor did it attempt to. The county clerk did that.'' He also asserts that by the enactment of section 69844.5 of the Government Code in 1953 the Legislature disapproved the ''carbon copy'' method. This section provides: ''The clerk of the superior court *may,* in lieu of minute books, judgment books and orders and decrees, photograph, microphotograph or photocopy all superior court minutes, judgments, orders and decrees. . . . All such photographs, microphotographs and photocopies shall be properly indexed and placed in convenient accessible files. . . .'' (Italics added.)

Originally the clerk laboriously entered judgments by copying them in longhand with pen and ink. Subsequently, as the typewriter came into use, it was found more economical, expeditious, and in some cases more legible to substitute that form of transcription for longhand. Later, and until August 1, 1952, the clerk of the Superior Court of the County of Los Angeles used photocopying or photostating as it is sometimes called. Under this process the original judgment signed by the trial judge with identifying book and page number placed on the upper margin of the judgment pages and the entry date

stamped on the first page of the judgment was photographed and the photocopies trimmed and bound together as pages of the judgment book. On June 1, 1952, the clerk called the attention of the judges of the Superior Court of the County of Los Angeles to the fact that the photocopying method required a delay of at least 24 hours in the entry of judgments as well as diverting the use of photocopying equipment from other purposes and therefore proposed that in the future by court rule attorneys preparing a judgment for the signature of a judge present two copies, one of which would be booked and paged with the date of entry thereon and kept bound in the judgment book, the other of which would be used to post to the register of actions and filed in the case file. The method was approved by the majority of the judges on July 1, 1952, and the rules of the court were amended by the addition of rule 23, effective August 1, 1952, requiring the presentation of a complete and clearly legible copy with the original. Subsequent to August 1, 1952, the new procedure was followed. Obviously, the purpose of the rule was to permit the county clerk to put the so-called ''carbon copy'' method into effect.

Plaintiff says photocopying imports absolute verity of the copy as to the original and this method is prescribed by section 69844.5 of the Government Code. He argues that since this section was enacted subsequent to the adoption of rule 23, the Legislature placed disapproval on the ''carbon copy'' method. ▓▓▓ Section 69844.5 provides that the clerk ''may in lieu of . . . judgment books'' photograph, microphotograph, or photocopy all superior court judgments. The section is permissive. Instead of binding handwritten or typewritten copies of judgments in a judgment book, the clerk *may* make photographs, microphotographs or photocopies. Sections 664 and 668 of the Code of Civil Procedure and section 69844.5 of the Government Code do not specify the manner of preparation of the copy of the judgment which goes into the judgment book. The clerk may use such methods as may become available by invention or the advances of science or such devices as will reduce costs, save time, and increase accuracy, so long as the judgment entered conforms to the decision of the court. ▓▓▓ Manifestly, if a judgment is signed by a judge and a carbon copy thereof is entered in a judgment book the carbon copy must be a true copy of the judgment as signed by the judge. There is no reason why a conformed ''carbon copy'' should not import absolute verity.

In order to expedite the entering of judgments in the judgment book, it has been necessary that several clerks be assigned specific page numbers from one book or from different books. Each clerk may complete his assigned block of numbers entering judgments in a judgment book on dates unrelated to the dates of entry in the other blocks of numbers by other clerks. An earlier page number may be entered on a date later than a subsequent page number. The lack of chronological sequence does not vitiate the effect of the entry of a judgment. There is no requirement that paging of different judgments must be in chronological order. The fact of entry in the judgment book, and a true record of the date of entry in the judgment book, are the important facts; and it matters not what judgments have been entered on preceding pages, or what judgments may be entered on subsequent pages. A judgment takes effect when it is entered, and that effect cannot be controlled by the sequence of other judgments.

Order reversed.

Wood (Parker), J., concurred.

A petition for a rehearing was denied September 16, 1954.